

**SIGNED this 29 day of July, 2008.**

_____
**John C. Cook**
**UNITED STATES BANKRUPTCY JUDGE**
_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **WHELAND FOUNDRY, LLC** | ) | **No. 06-10904** |
| | ) | **Chapter 11** |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| **WHELAND FOUNDRY, LLC** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **Adv. No. 08-1037** |
| | ) | |
| **METAL TECHNOLOGIES, INC.** | ) | |
| | ) | |
| Defendant | ) | |

### MEMORANDUM

This proceeding is before the court on a motion by the defendant, Metal Technologies,

Inc. ("MTI"), to dismiss three counts of a five-count complaint filed against it by the plaintiff

and debtor-in-possession, Wheland Foundry, LLC ("Wheland"). Having considered the motion

and the briefs filed by the parties, the court is of the opinion that the motion is well taken and should be granted.

The complaint's factual allegations can be summarized as follows. Defendant MTI and another company, Livingston Company of Chattanooga ("Livingston"), the principal owner of Wheland, entered into an agreement for the acquisition and management of Wheland, subject to the good faith negotiation of a formal Asset Purchase Agreement that would result in MTI purchasing Wheland. At the time, MTI represented that it had another foundry that was closing and that it would shift those customers to Wheland, thus increasing Wheland's customer base. While the purchase agreement was being finalized, it was agreed that MTI would operate Wheland pursuant to a management contract. During its management of Wheland, MTI did not shift customers from its closed foundry to Wheland but rather it shifted those customers to a rival foundry owned by MTI. The purchase agreement between MTI and Livingston was never consummated and MTI  was eventually replaced as Wheland's management. A few weeks later, Wheland was forced to cease operations because of its poor financial condition. A substantial portion of the business previously performed at Wheland had been and continued to be shifted to the rival foundry owned by MTI.

The complaint alleges that MTI's conduct resulted in five torts against Wheland: (1) breach of fiduciary duty; (2) intentional interference with its contracts; (3) intentional interference with its business relationships; (4) usurpation of corporate opportunity; and (5) deepening insolvency. MTI's motion seeks the dismissal of the two counts involving intentional interference with contract and business relationship and the count alleging deepening

insolvency on the grounds that each fails to state a claim for which relief can be granted. Both

parties agree that the law of Georgia applies in this case.

A.

Taking up first the two counts relating to intentional interference with contract and busi-

ness relationship, Georgia is very clear in its requirement that an alleged interferer, either with a

contract or a business relationship, must be a virtual interloper and stranger both to the contract

in question and the business relationship out of which the contract grew. *Atlanta Market Ctr.*

*Mgmt. Co. v. McLane*, 503 S.E.2d 278 (Ga. 1998). "One is not a stranger to the contract just be-

cause one is not a party to the contract . . . . The defendant must be a stranger to both the contract

*and* the business relationship giving rise to and underpinning the contract." *Id.* at 283. The Su-

preme Court of Georgia went on in the strongest language to state its specific intention to reduce

the number of plaintiffs who could qualify as strangers:

> We endorse the Court of Appeals' line of cases which, in effect, reduce the
> number of entities against which a claim of tortious interference with contract
> may be maintained. We reiterate that in order to be liable for tortious interference,
> one must be a stranger to both the contract at issue and the business relationship
> giving rise to and underpinning the contract. In other words, all parties to an inter-
> woven contractual arrangement are not liable for tortious interference with any of
> the contracts or business relationships.

*Id.* at 283 (citation omitted). In the course of its opinion, the court also held that the applicability

of the "stranger doctrine" is the same for the tort of interference with business relationships as it

is for the tort of interference with contractual relationships. *Id.* at 283 n.2.

MTI argues that Wheland's complaint fails to allege any facts that might support the idea that MTI was a stranger to the contracts between Wheland and its customers or the business relationship between Wheland and its customers and that therefore the complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6). A review of the complaint's specific factual allegations clearly shows MTI's managerial role at Wheland: Paragraph 8 ("MTI entered into a management contract with Livingston to operate Wheland . . ."); Paragraph 9 ("The purpose of the JV Agreement was to place MTI in control of operations and management over Wheland . . ."); Paragraph 10 ("MTI began to immediately exercise control over Wheland . . ."); Paragraph 14 ("Under the management by MTI . . ."); Paragraph 16 ("MTI was replaced as management of Wheland."); Paragraph 19 ("The relationship between MTI and Livingston constituted a joint venture for the purposes of managing Wheland."); Paragraph 20 ("MTI exerted actual control over the day to day operations of Wheland, Wheland's finances, and Wheland's relationship with its customers."); Paragraph 25 ("MTI mismanaged Wheland in an attempt to alienate the customers that Wheland had . . ."). By contrast, there is no allegation anywhere to the effect that MTI was a stranger to Wheland's contracts or business. Instead the complaint merely alleges in conclusory fashion that MTI tortiously interfered with Wheland's contracts and business relationships.

Wheland excuses its failure to plead "strangeness" by adverting to Fed. R. Civ. P. Rule 8(d) and its provisions that a party may plead in the alternative and may state inconsistent claims. While this is true as a general matter, the permission given by the rule to plead in the alternative requires *actually* pleading in the alternative rather than merely resorting to legal conclusions in the alternative. In two cases almost identical to the case at bar, federal district courts have decided that the failure to allege "strangeness" was fatal to counts in complaints

attempting to allege tortious interference, particularly where it also appeared that the defendants were involved in the plaintiff's contractual or business affairs. In *Aioi Seiki, Inc. v. JIT Automation, Inc.,* 11 F. Supp. 2d 950 (E.D. Mich. 1998), the court noted that, under Michigan law, in order "to maintain a positive action for tortuous interference, a plaintiff must establish that the defendant was a 'third party' to the contract or business relationship." *Id.* at 954. The plaintiff had pled that two of the defendants were instrumentalities and alter egos of the third defendant and attempted to pierce the corporate veil in that regard. However, it also claimed that two of these defendants interfered with the plaintiff's contract with the third defendant. Noting this, the district court said:

> Despite the fact that Fed.R.Civ.P. 8(e)(2) permits pleading in the alternative, at no point in the Count II [*sic*] does plaintiff assert that JIT Illinois or JIT Ontario are third parties to the contract. In fact, plaintiff, in ¶ 27 of the complaint, re-asserts the allegations made in Count I, including its claim that the entities co-exist. Therefore, this claim on its face is defective.

*Id.* at 954. Thus, in dismissing the count at issue, the district court focused on two things: first, that the *complaint alleged* the defendants were all mixed up with the plaintiff in a business relationship, and second, that the plaintiff had *failed to allege* their strangeness. The plaintiff's conclusory claim that the defendants were tortious interferers (and thus necessarily strangers) contradicted its express allegations that all the defendants were involved in the business relationship with the plaintiff. The claim was doubly defective in failing to allege strangeness and then in contradicting the specific allegations of the complaint.

The *Aioi* court relied on another district court case that had rejected a plaintiff's "alternative pleading" excuse in a tortious interference case. In *Metro D.C. Paving, Highway and Con-*

*struction Materials Council, AFL-CIO v. Roubin & Janeiro, Inc.*, No. 80-699, 1981 WL 2392

(D.D.C. May 26, 1981), Judge Sirica dismissed a tortious interference count because –

> [d]espite the plaintiff's arguments that Rule 8(e)(2) of the Federal Rules of Civil
> Procedure permits pleading in the alternative, the simple fact remains that at no
> point in the plaintiff's second cause of action *does it actually plead in the alterna-*
> *tive* that G & C as a non-party induced the breach of a contract between the plain-
> tiff and Roubin.

*Id.* at *2 (emphasis added).

In the case at bar, the court is asked to accept conclusory pleadings of tortious interfer-

ences that directly contradict the alleged facts. While it is true that the court will read the com-

plaint in the light most favorable to the plaintiff and will generally accept the pleader's descrip-

tion of what happened to it, "the court will not accept conclusory allegations concerning the le-

gal affect of the events plaintiff has set out if these allegations do not reasonably follow from his

description of what happened, or if these allegations are contradicted by the description itself."

5B Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed.

2004); *see Browning v Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (holding that court will not

accept inferences or legal conclusions unsupported by facts set out in complaint); *Briscoe v.*

*LaHue*, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual

assertions will not withstand a motion to dismiss."), *aff'd*, 460 U.S. 325 (1983).

In its complaint, Wheland repeatedly alleges that MTI was its manager and specifically

that MTI managed Wheland's relationship with its customers. But Wheland never alleges that

MTI was a stranger to Wheland's business relationship with its customers. Therefore, not only

has Wheland failed to allege a necessary element of its case – strangeness, but its conclusory counts alleging tortious interference with contract and business opportunity actually contradict its specification of the underlying facts. The court finds that Wheland has failed to state a claim with respect to its counts alleging tortious interference with contract and business relationship, and accordingly these counts will be dismissed.

## B.

Defendant MTI has also moved to dismiss the last count of Wheland's complaint, which is captioned "Deepening Insolvency." It avers that MTI caused Wheland to take on additional debt while Wheland was insolvent and that this was detrimental to Wheland's creditors. It appears, however, that Georgia has not recognized the supposed tort of deepening insolvency. Neither party to this litigation has cited any Georgia case even remotely touching on this subject, and this court's own research has discovered no indication of any kind concerning Georgia's possible stance toward this new and debatable tort of deepening insolvency. Under these circumstances the court believes that it would be inappropriate to identify a whole new state cause of action and inflict it for the first time on the parties to this litigation. It is simply not "the function of the federal court to expand the existing scope of state law." 19 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4507 (2d ed. 1996); *accord*, *Barfield v. Madison County*, 212 F.3d 269, 272 (5th Cir. 2000) (stating that the court "will not create 'innovative theories of recovery or defense' under local law, but will rather merely apply it 'as it currently exists.'"); *Dean v. Dean,* 821 F.2d 279, 284 (5th Cir. 1987) ("Moreover, as a federal

court attempting to determine state law, we are especially hesitant to invent a new cause of

action or even to extend the existing case law and establish a right to recover damages . . . .").

It is also significant to note the recent criticism of the concept of deepening insolvency as

an actionable tort. In *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168,

206 (Del. Ch. 2006), the court refused to recognize the supposed tort of deepening insolvency

and criticized "those federal courts that became infatuated with [and] did not look closely

enough at the object of their ardor." *Id.* at 206. The court went on to explain:

> None of those decisions explains the rationale for concluding that deepening
> insolvency should be recognized as a cause of action or how such recognition
> would be consistent with traditional concepts of fiduciary responsibility. In a
> more recent decision, the Third Circuit has taken a more skeptical view of the
> deepening insolvency concept, a view consistent with the outcome reached in this
> decision. In fact, many of the decisions that seem to embrace the concept of deep-
> ening insolvency do not clarify whether the concept is a stand-alone cause of ac-
> tion or a measurement of damages (the extent of deepening) for other causes of
> action.

*Id.* at 206-07.

The Supreme Court of Delaware, presumptively well schooled in the nuances of business

law, affirmed *Trenwick* "on the basis of and for the reasons assigned by the court of chancery in

its opinion . . . ." *Trenwick America Litigation Trust v. Billet*, 931 A.2d 438 (Del. 2007). Other

reasons to refrain from recognizing deepening insolvency as a new tort may be found in Sabin

Willet, *The Shallows of Deepening Insolvency*, 60 Bus. Law 549 (2005).

Considering the complete absence of Georgia law indicating the possible existence of this

tort, the sensible warnings of courts and commentators that the role of federal courts is not to

create new state causes of action, and considering further that the trend of the decisions may be unfavorable to the continued recognition of this supposed tort, the court declines to hold that the tort of deepening insolvency is an actionable tort under Georgia law. Accordingly the count alleging "deepening insolvency" will be dismissed for failure to state claim upon which relief can be granted.

The defendant's motion to dismiss will be granted, and an appropriate order will enter.

###